# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**WILLIAM S. SWORDS,**

    **Plaintiff,**

v.

**NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,**

    **Defendant.**

Civil Action No. 3:20cv053-MPM-RP

## COMPLAINT

William S. Swords states the following as his complaint against Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper").

## PARTIES

1. Swords is an adult citizen of the State of Mississippi, whose principal residence is in Hernando, Mississippi.

2. Nationstar Mortgage, LLC d/b/a Mr. Cooper is a Texas limited liability company doing business in Hernando, Mississippi.

3. Some of the acts or omissions may have occurred while the Plaintiff's home mortgage loan was serviced by Pacific Union Financial, LLC ("Pacific Union"). The Plaintiff is informed and believes that Pacific Union was acquired by Mr. Cooper in February 2019.

4. Pacific Union was a Texas limited liability company doing business in Hernando, Mississippi until such time that it was acquired by Mr. Cooper.

5. Upon information and belief, Pacific Union no longer exists as an entity and Mr. Cooper acquired any liabilities of Pacific Union associated with this matter.

1

**JURISDICTION**

6. This Court has subject matter jurisdiction of the Plaintiff's claims arising under federal law pursuant to 28 U.S.C. § 1331 and § 1332.

7. This Court has subject matter jurisdiction of the Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

**VENUE**

8. The Oxford Division of the Northern District of Mississippi is the proper venue for this action pursuant to 28 U.S.C. § 1391.

9. A substantial part of the events or omissions giving rise to this action occurred within this district and division.

10. Likewise, the property that is the subject of this action is located within this district and division.

**FACTS**

11. Mr. Swords had a home mortgage loan, secured by the property located at 2192 Mount Pleasant Road, Hernando, Mississippi 38632, which originated in or around September 2015.

12. Pacific Union was the original mortgage servicer for Mr. Swords's loan.

13. Mr. Swords purchased the home for his mother, Ginger Gullick.

14. Ms. Gullick was responsible for all mortgage payments.

15. Due to unforeseen financial circumstances, Ms. Gullick fell behind on her mortgage payments in or around June 2016.

16. As a result, Mr. Swords's mortgage account accumulated late charges, property preservation fees, and corporate advance fees.

17. In or around June 2017, Mr. Swords entered a loan modification agreement with Pacific Union.

18. Mr. Swords agreed to pay the unpaid principal balance of $158,736.54 "plus capitalized interest and other amounts capitalized, which is limited to escrows, and any legal fees and related foreclosure costs that may have been accrued for the work completed," in the amount of $4,952.85, for a new principal amount of $163,689.39.

19. Thus, all late charges, property preservation fees, corporate advance fees, and other foreclosure-related costs were or should have been included in the new principal amount agreed to in the Loan Modification Agreement.

20. In or around April 2018, Mr. Swords requested and received a copy of his payment history from Pacific Union.

21. Pacific Union's customer account activity statement for Mr. Swords did not show a total fee balance.

22. Therefore, Mr. Swords could not tell from his payment history that costs and fees incurred prior to the modification were still being assessed on his mortgage loan account.

23. In or around February 2019, Pacific Union transferred the servicing of Mr. Swords's mortgage loan to Mr. Cooper.

24. Once servicing was transferred to Mr. Cooper, a complete payment history showed that despite the modification agreement, late charges, property preservation fees, and corporate advance fees incurred prior to the modification were assessed as deferred fees on Mr. Swords's mortgage loan account after the modification.

25. A complete payment history from Mr. Cooper also showed that many payments were incorrectly marked as 'reversed' or 'returned' on Mr. Swords's account.

26. According to Mr. Cooper's records, mortgage payments made on this account by Ms. Gullick were 'reversed' or 'returned' on the following dates:

- February 14, 2018
- March 15, 2018
- January 24, 2019
- March 31, 2019 (effective February 1, 2019)
- March 31, 2019 (effective March 1, 2019)
- March 31, 2019 (effective March 29, 2019)
- June 10, 2019.

27. Ms. Gullick's bank records do not reflect that any payments made to Pacific Union or Mr. Cooper were returned on or near these dates.

28. On April 8, 2019, Mr. Swords mailed a Qualified Written Request ("First QWR") to Mr. Cooper which notified the servicer of these errors.

29. Mr. Cooper acknowledged Mr. Swords's First QWR on May 8, 2019.

30. Mr. Cooper mailed a Borrower Assistance Packet to Mr. Swords on May 16, 2019, which did not contain any answers to Mr. Swords's First QWR.

31. In or around May 2019, Mr. Cooper representatives made contact with Bancorp South, Ms. Gullick's bank at the time, and requested verbal confirmation of mortgage payments.

32. No further response was received by Mr. Swords or Ms. Gullick.

33. On July 2, 2019, Mr. Swords, through his attorneys, sent a second QWR ("Second QWR") to Mr. Cooper.

34. The Second QWR informed Mr. Cooper of its failure to adequately respond to Mr. Swords's First QWR.

35. The Second QWR notified Mr. Cooper of the erroneous fees and charges assessed against Mr. Swords.

36. The Second QWR also notified Mr. Cooper that payments were improperly marked as 'reversed' or 'returned' on Mr. Swords's account.

37. The Second QWR further requested that Mr. Cooper produce any notes created by servicer personnel reflecting communications with the borrower about the mortgage loan account.

38. On July 25, 2019, Mr. Cooper responded to the Second QWR with a copy of a written response that was allegedly mailed to Mr. Swords on May 14, 2019.

39. Mr. Swords never received the alleged May 14 response.

40. The alleged May 14 response was also never scanned into Mr. Swords's online account at MrCooper.com.

41. Mr. Cooper's July 25, 2019 response denied any error to Mr. Swords's account by Mr. Cooper.

42. Mr. Cooper's July 25, 2019 response also declined to produce any of the servicer notes requested, stating that the servicer notes were outside the scope of information that must be provided.

43. In or around August 2019, Mr. Swords found a potential buyer for his home and requested a payoff quote from Mr. Cooper.

44. On August 23, 2019, Mr. Swords received a payoff quote of $162,514.32 from Mr. Cooper.

45. The payoff quote included a Deferred Late Fee balance of $385.80, all of which was incurred prior to Mr. Swords's modification agreement with Pacific Union in June 2017.

46. The payoff quote also included a balance of $756.81 in "Lender Paid Expenses," which improperly consisted of at least $343.78 in property preservation and corporate advance fees incurred prior to the modification agreement in June 2017.

47. The remaining "Lender Paid Expenses" balance consisted of fees incurred as a result of payments improperly marked as 'reversed' or 'returned' by Mr. Cooper.

48. On September 3, 2019, Mr. Swords's attorneys sent a third QWR ("Third QWR") to Mr. Cooper, giving notice of error in the payoff amount.

49. The Third QWR further informed Mr. Cooper that although Mr. Swords disputed the payoff amount, Mr. Swords had found a buyer for his home and intended to pay the quoted payoff amount to avoid losing the sale of his home.

50. In the letter, Mr. Swords reserved any and all rights to seek and recover any excess payments, fees, or other charges made to Mr. Cooper.

51. On September 6, 2019, Mr. Swords closed on the sale of his home and the payoff amount was sent to Mr. Cooper.

52. On September 13, 2019, Mr. Cooper responded to the Third QWR.

53. No new information was provided in Mr. Cooper's response.

54. The correspondence stated that the payoff amount was received by Mr. Cooper and applied to Mr. Swords's account on September 9, 2019.

55. It further requested that Mr. Swords's attorneys provide Mr. Cooper a detailed request regarding Mr. Swords's concerns about payments.

56. Mr. Cooper otherwise denied any error to Mr. Swords's account.

57. On October 4, 2019, Mr. Swords's attorneys sent a fourth QWR ("Fourth QWR") to Mr. Cooper.

58. The Fourth QWR provided Mr. Cooper a list of all 'reversed' or 'returned' payments on the account and requested a full written explanation for each and every reversed payment.

59. It also provided a detailed explanation of Mr. Cooper's errors in calculating the Deferred Late Fee and Lender Paid Expense balances in the payoff quote.

60. The Fourth QWR also renewed Mr. Swords's request for any notes created by servicer personnel reflecting communications with the borrower about the mortgage loan account, which were originally requested in the Second QWR.

61. Mr. Cooper responded to the Fourth QWR on October 8, 2019.

62. Mr. Cooper did not adequately respond to Mr. Swords's request for a full explanation for each 'reversed' or 'returned' payment.

63. The letter only addressed the date of each payment, the date of each reversal, and stated how each action affected the unpaid principal balance, but did not explain or give reason for each reversal as requested in the Fourth QWR.

64. Mr. Cooper denied any error in the payoff amount and declined Mr. Swords's request to correct the Deferred Late Fee and Lender Paid Expense balances.

65. Mr. Cooper once again declined to produce any notes created by servicer personnel reflecting communications with the borrower about the mortgage loan account, stating that production of the notes would be unduly burdensome.

66. Mr. Cooper failed to properly respond to Mr. Swords's First, Second, Third, and Fourth QWRs.

67. Mr. Cooper has improperly collected money from Mr. Swords over and above what was actually owed to Mr. Cooper.

## COUNT I

68. The previous paragraphs of this complaint are incorporated herein by reference as though set forth again in full.

69. On or around April 8, 2019, Mr. Swords mailed a letter to Mr. Cooper, which qualified as Mr. Swords's First QWR pursuant to 12 U.S.C. § 2605(e).

70. Mr. Swords's First QWR demanded that Mr. Cooper correct certain errors and provide certain information.

71. Mr. Cooper acknowledged receipt of the First QWR, although beyond the five (5) day requirement, but did not make appropriate corrections to the errors or provide the requested information to Mr. Swords within the specified time frame set out in 12 U.S.C. § 2605(e).

72. Mr. Cooper's failure to rectify the errors or provide the requested information set forth in Mr. Swords's First QWR is a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and is part of a pattern and practice of noncompliance with § 2605.

WHEREFORE, Mr. Swords demands judgment against Mr. Cooper for statutory and actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 12 U.S.C. § 2605(f)(1), costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) or as otherwise allowed by law, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT II

73. The previous paragraphs of this complaint are incorporated herein by reference as though set forth again in full.

74. On or around July 2, 2019, Mr. Swords, through his attorneys, sent Mr. Cooper a Second QWR pursuant to 12 U.S.C. § 2605(e).

75. Mr. Swords's Second QWR demanded that Mr. Cooper correct certain errors and provide certain information.

76. Mr. Cooper responded to the Second QWR, but did not make the appropriate corrections to the errors on Mr. Swords account or provide the requested information as requested in the Second QWR.

77. Mr. Cooper's failure to rectify the errors or provide the requested information set forth in Mr. Swords's Second QWR is a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and is part of a pattern and practice of noncompliance with § 2605.

WHEREFORE, Mr. Swords demands judgment against Mr. Cooper for statutory and actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 12 U.S.C. § 2605(f)(1), costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) or as otherwise allowed by law, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT III

78. The previous paragraphs of this complaint are incorporated herein by reference as though set forth again in full.

79. On September 3, 2019, Mr. Swords, by and through his attorney of record, sent Mr. Cooper a Third QWR pursuant to 12 U.S.C. § 2605(e).

80. Mr. Swords's Third QWR demanded that Mr. Cooper correct certain errors and provide certain information.

81. Mr. Cooper responded to the Third QWR, but did not make the appropriate corrections to the errors on Mr. Swords's account or provide the requested information as requested in the Third QWR.

82. Mr. Cooper's failure to rectify the errors or provide the requested information set forth in Mr. Swords's Third QWR is a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and is part of a pattern and practice of noncompliance with § 2605.

WHEREFORE, Mr. Swords demands judgment against Mr. Cooper for statutory and actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 12 U.S.C. § 2605(f)(1), costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) or as otherwise allowed by law, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT IV

83. The previous paragraphs of this complaint are incorporated herein by reference as though set forth again in full.

84. On October 4, 2019, Mr. Swords, through his attorneys, sent Mr. Cooper a Fourth QWR pursuant to 12 U.S.C. § 2605(e).

85. In the Fourth QWR, Mr. Swords provided even greater detail of the precise errors in his loan servicing and demanded Mr. Cooper correct those errors and provide certain additional information not provided in response to previous QWRs.

86. Mr. Cooper responded to Mr. Swords's Fourth QWR, but did not make the appropriate corrections to the errors or provide the requested information as requested in the Fourth QWR.

87. Mr. Cooper's failure to rectify the errors or provide the requested information set forth in Mr. Swords's Fourth QWR is a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e) and is part of a pattern and practice of noncompliance with § 2605.

WHEREFORE, Mr. Swords demands judgment against Mr. Cooper for statutory and actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 12 U.S.C. § 2605(f)(1), costs, expenses, and attorneys' fees pursuant to 12 U.S.C. § 2605(f)(3) or as otherwise allowed by law, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT V

88. The previous paragraphs of this complaint are incorporated herein by reference as though set forth again in full.

89. On August 23, 2019, Mr. Swords received a payoff quote of $162,514.32 from Mr. Cooper.

90. On September 3, 2019, Mr. Swords, through his attorneys, sent Mr. Cooper a Third QWR, which notified Mr. Cooper that the payoff amount was incorrect.

91. On September 9, 2019, Mr. Cooper accepted the inaccurate payoff amount and applied the funds to pay off Mr. Swords's loan in full.

92. On September 13, 2019, Mr. Cooper responded to Mr. Swords's Third QWR, but did not make the appropriate corrections to the errors in the payoff amount.

93. Mr. Cooper's failure to provide an accurate payoff balance or to rectify the inaccurate payoff balance upon notice is a violation of 12 C.F.R. § 1026.36(c)(3) and is part of a pattern and practice of noncompliance with § 1026.

WHEREFORE, Mr. Swords demands judgment against Mr. Cooper for statutory damages, actual damages for both economic and noneconomic injuries (including mental anguish and emotional distress) pursuant to 15 U.S.C. § 1640, costs, expenses, and attorneys' fees pursuant to

15 U.S.C. § 1640 or as otherwise allowed by law, and such other and further relief as a jury may award and this Court may deem just and proper.

## COUNT VI

94. The previous paragraphs of this complaint are incorporated herein by reference as though set forth again in full.

95. The original note and mortgage established a contract that was binding on Pacific Union and Mr. Cooper.

96. Pacific Union and Mr. Cooper breached this contract with Mr. Swords by failing to accurately service Mr. Swords's mortgage loan account, which resulted in erroneous fees, improperly reversed payments, and an incorrect payoff balance.

97. As a result of said breach, Mr. Swords was and continues to be damaged, such damage including mental anguish and/or emotional distress.

WHEREFORE, Mr. Swords demands judgment against Mr. Cooper for compensatory damages (including mental anguish and emotional distress), prejudgment interest, court costs, and such other and further relief as a jury may award or this Court may deem just and proper.

## COUNT VII

98. The previous paragraphs of this complaint are incorporated herein by reference as though set forth again in full.

99. The Loan Modification Agreement established a contract that was binding on Pacific Union and Mr. Cooper.

100. Pacific Union and Mr. Cooper breached this contract through their misapplication of fees to Mr. Swords's mortgage loan account after the modification.

101. As a result of said breach, Mr. Swords was and continues to be damaged, such damage including mental anguish and/or emotional distress.

WHEREFORE, Mr. Swords demands judgment against Mr. Cooper for compensatory damages (including mental anguish and emotional distress), prejudgment interest, court costs, and such other and further relief as a jury may award or this Court may deem just and proper.

    Respectfully submitted,

    */s/ Jane L. Calamusa*
    Jane L. Calamusa (CALAJ5640)
    Attorney for Plaintiff

**Of Counsel:**

ROSEN HARWOOD, P. A.
2200 Jack Warner Pkwy, Ste. 200
P.O. Box 2727
Tuscaloosa, AL 35403
(205) 344-5000
jcalamusa@rosenharwood.com

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 28.**

        Respectfully submitted,

        */s/ Jane L. Calamusa*
        Jane L. Calamusa (CALAJ5640)
        Attorney for the Plaintiff

OF COUNSEL:

ROSEN HARWOOD, P.A.
2200 Jack Warner Parkway, Suite 200 (35401)
Post Office Box 2727
Tuscaloosa, Alabama 35403
Telephone: (205) 344-5000
Facsimile: (205) 758-8358
Email: jcalamusa@rosenharwood.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE ADDRESS LISTED BELOW.**

**Defendant's Address:**

Nationstar Mortgage, LLC d/b/a Mr. Cooper
Corporation Service Company
7716 Old Canton Road, Suite C
Madison, Mississippi 39110